[No. D039663. Fourth Dist., Div. One. Apr. 24, 2003.]

FERN JACOBS, Plaintiff and Appellant, v.
GROSSMONT HOSPITAL, Defendant and Respondent.

## COUNSEL

Law Offices of Dan Bacal and Dan Bacal for Plaintiff and Appellant.

Lotz, Doggett & Rawers and J. Jason Hill for Defendant and Respondent.

## OPINION

### AARON, J.—

## I.

## INTRODUCTION

Plaintiff Fern Jacobs appeals a summary judgment in favor of defendant Grossmont Hospital on Jacobs's complaint for professional negligence and premises liability. The action arose when Jacobs, following an unsuccessful suicide attempt, tripped and sustained injuries while at Grossmont Hospital during a 72-hour hold under Welfare and Institutions Code[1] section 5150, which allows temporary detention of mentally disordered individuals who

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

pose a danger either to themselves or to others, for treatment and evaluation. The court granted summary judgment for Grossmont Hospital on the ground that the immunity of section 5278 applied to *all* civil tort liability related to an admission under a lawful section 5150 hold.

The issue before us is the scope of the immunity granted under section 5278 to "[i]ndividuals authorized . . . to detain." Jacobs maintains that the immunity applies only to the decision to detain a person for a 72-hour hold. Grossmont Hospital contends that if the decision to detain is lawful, that is, supported by probable cause, then the immunity applies to *all* evaluation and treatment that may occur during the detention, with the possible exception of "extreme or outrageous acts not rationally related to either a therapeutic purpose or necessary to maintain the detention for the required period."

We conclude that in order to effectuate the Legislature's purpose to obtain prompt evaluation and treatment for persons detained pursuant to a 72-hour hold, the immunity of section 5278 applies to individuals who initiate and maintain a detention under section 5150. However, we further conclude that section 5278 does not confer immunity for negligent or other wrongful conduct that may occur in the evaluation or treatment of involuntarily detained patients. Accordingly, we reverse the summary judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Jacobs attempted suicide by overdosing on medication. The medical staff at Grossmont Hospital's emergency room determined that Jacobs posed a danger to herself and placed her on a 72-hour hold under section 5150. They also contacted Jacobs's primary care physician, who requested that Jacobs be admitted to Grossmont Hospital for treatment related to her overdose. During the 72-hour hold, pursuant to a doctor's orders, a nurse assisted Jacobs as she walked down the hospital corridor. Jacobs was wearing a rubber slipper that caught on the floor, causing her to fall and fracture a bone in her leg.

Jacobs sued Grossmont Hospital for professional negligence and premises liability. Her professional negligence claim alleged that Grossmont Hospital "negligently and carelessly failed to supervise and monitor Plaintiff while she was making a doctor ordered walk down the hospital corridor" and that defendants "knew, or in exercise of reasonable care for Plaintiff's safety should have known, that Plaintiff was likely to fall while walking as a result of her physical and mental condition." Her premises liability claim alleged that she slipped and fell because Grossmont Hospital "negligently, carelessly

and recklessly entrusted, managed, maintained, controlled, inspected and supervised said premises so as to allow a substance to be on the floor where Plaintiff was walking."

Grossmont Hospital moved for summary judgment on the ground that Jacobs's causes of action were barred by the immunity provisions of section 5278. Grossmont Hospital maintained that because Jacobs's injuries occurred during treatment and evaluation provided in connection with a lawfully initiated 72-hour hold, it was immune from liability. Jacobs opposed the motion, arguing that the immunity provided by section 5278 applied only to the decision to detain a person, but did not provide blanket immunity for negligent or wrongful acts that may occur during the detention. Alternatively, she argued that her admission to Grossmont Hospital was independent of the 72-hour hold, and was thus outside the scope of the immunity conferred by section 5278, because her admission had been authorized by her primary care physician.

After a hearing, the court granted summary judgment on the basis that section 5278 provides immunity from "all civil tort liability related to an admission . . . pursuant to a Section 5150 hold . . . ." The court concluded that if the initial detention was lawful, that is, supported by probable cause, there could be no civil liability for anything that might occur during the detention. The court further ruled that no separate admission by Jacobs's primary care physician had occurred so as to create liability outside the immunity of section 5278.

III.

DISCUSSION

A. *Standard of Review*

Under Code of Civil Procedure section 437c, subdivision (c), summary judgment is proper where the papers submitted establish that no triable issues of material fact exist and the moving party is entitled to judgment as a matter of law. ▮ "On appeal, the reviewing court exercises its independent judgment, deciding whether the moving party established undisputed facts that negate the opposing party's claim or state a complete defense." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486-487 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; see also *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].) The propriety of summary judgment in this case depends on whether the immunity provided by section 5278 applies to Grossmont Hospital on the undisputed facts presented.

## B. *Involuntary Detention of the Mentally Disordered and Exemption from Liability Under the Lanterman-Petris-Short Act*

The Lanterman-Petris-Short Act (§ 5000 et seq.) (LPS Act) governs the involuntary treatment of the mentally ill in California. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008 [36 Cal.Rptr.2d 40, 884 P.2d 988].) Under its provisions, an individual may be brought to an appropriate facility for an evaluation if there is "probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled." (§ 5150.) If the facility admits the person, it may detain him or her for no more than 72 hours for treatment and evaluation. (§ 5151; *In re Azzarella* (1989) 207 Cal.App.3d 1240, 1245 [254 Cal.Rptr. 922].)

■ Jacobs does not challenge Grossmont Hospital's decision to detain her, in essence conceding that her involuntary detention was supported by probable cause and was therefore lawful under section 5150. Rather, she argues that under the plain language of section 5278, the immunity applies only to the decision to detain a person, and not to acts that occur after the person is detained.

Section 5278 provides in part: "Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable *for exercising this authority* in accordance with the law." (Italics added.)

Section 5278 clearly grants immunity to those individuals authorized to detain a person for a 72-hour hold. This includes peace officers, members of the attending staff at designated facilities, certain members of a mobile crisis team and other professionals designated by the county. (§ 5150; see *Ford v. Norton* (2001) 89 Cal.App.4th 974, 979 [107 Cal.Rptr.2d 776].) However, the language of section 5278 is arguably ambiguous as to the scope of the immunity conferred. Therefore, this court must determine whether the immunity provision of section 5278 pertains only to the decision to detain (as Jacobs alleges), to the detention itself and its inherent attributes, or to anything that may occur in the course of evaluation and treatment provided during the 72-hour period (as Grossmont Hospital claims). In order to make this determination, the court must apply basic principles of statutory construction.

## C. *Legislative Intent and the LPS Act*

■ "The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.'" (*People v. Snook*

(1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) The first step in this process is to scrutinize the words of the statute, giving them a plain and commonsense meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) If the language is clear and unambiguous, the plain meaning of the statute governs. If, however, the statutory terms are ambiguous, we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) Further, we must examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *Edgar v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1, 9 [76 Cal.Rptr.2d 83].)

"The LPS Act is a comprehensive scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time. (§ 5150 [short-term emergency evaluation]; § 5250 [intensive 14-day treatment]; § 5300 [180-day commitment for the imminently dangerous]; § 5260 [extended commitment for the suicidal]; § 5350 [30-day temporary conservatorship or one year conservatorship for the gravely disabled].)" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].) "The LPS Act must be construed to promote the intent of the Legislature, among other things, to end the inappropriate, indefinite and involuntary commitment of mentally disordered persons, to provide prompt evaluation and treatment *and to protect mentally disordered persons* (§ 5001)." (*Michael E. L. v. County of San Diego* (1986) 183 Cal.App.3d 515, 525 [228 Cal.Rptr. 139], italics added.) To achieve these ends, "a number of LPS Act provisions allow a person to be removed from the general population in order to be civilly committed based on a probable cause determination made by a mental health or law enforcement professional . . . ." (*Cooley v. Superior Court, supra*, 29 Cal.4th at p. 254.)

### D. *The Scope of Immunity Conferred Under Section 5278*

Consistent with the goals of the LPS Act, the decision to detain a person involuntarily for 72 hours requires the careful exercise of judgment in evaluating whether, as a result of mental disorder, a person poses a danger to

others, or to himself or herself. To eliminate any concern for possible liability related to the decision to detain, section 5278 clearly affords immunity to those individuals who exercise the authority to detain in accordance with the law. This immunity allows individuals authorized to detain a person for 72-hour treatment and evaluation to make that decision without fear of exposure to criminal or civil liability. The prospect of liability for initiating a 72-hour hold would frustrate and impede the Legislature's intent to provide prompt evaluation and treatment for the mentally ill and to ensure public safety. Thus, the immunity of section 5278 necessarily applies to individuals or entities who make the decision to detain, when that decision is supported by probable cause. (*Cruze v. National Psychiatric Services, Inc.* (2003) 105 Cal.App.4th 48, 56 [129 Cal.Rptr.2d 65]; see also *Brimmer v. California Charter Medical, Inc.* (1986) 180 Cal.App.3d 678, 685-686 [225 Cal.Rptr. 752].)

█ Although the Legislature could have done so, it did not expressly exempt from liability individuals authorized to evaluate and treat detainees during the 72-hour hold. Nevertheless, Grossmont Hospital urges us to interpret section 5278 to include among those exempted from liability *all* individuals who provide evaluation and treatment to the mentally ill patient during the 72-hour hold. Relying on this court's opinion in *Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068 [49 Cal.Rptr.2d 880], Grossmont Hospital argues that the scope of the immunity provided by section 5278 is not limited to the decision to detain, but rather, includes *all* acts or omissions rationally related to providing treatment and evaluation, or reasonably incidental to maintain the hold. This court is unwilling to give the statute such a broad interpretation.

In *Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at page 1075, the plaintiff, Heater, was placed on a 72-hour hold pursuant to section 5150. In accordance with doctors' orders, Heater was medicated because he was struggling and was highly agitated. (*Heater, supra,* 42 Cal.App.4th at p. 1076.) After his release, he sued the hospital and its staff for false imprisonment, assault and battery, and medical malpractice. The trial court ruled that the defendants were immune from liability under section 5278 and entered judgment for them on all causes of action. (*Heater, supra,* 42 Cal.App.4th at p. 1078.)

On appeal, Heater asserted: (1) he was falsely imprisoned because he was admitted to the hospital without a doctor's order; (2) defendants committed a battery because he did not consent to having a tranquilizer administered to him; and (3) the immunity conferred by section 5278 does not apply to medical malpractice. (*Heater v. Southwood Psychiatric Center, supra,* 42

Cal.App.4th at p. 1079.) In affirming the judgment, this court held that the uncontradicted evidence demonstrated that Heater had been properly detained under section 5150, and thus no false imprisonment had occurred. (*Heater, supra,* 42 Cal.App.4th at p. 1081.) As to the battery, the court held that an involuntary detainee need not consent to administration of the type of medication Heater received. The court also observed that, in any event, administering medication under the particular circumstances was within the scope of the immunity contemplated by section 5278. (*Heater, supra,* 42 Cal.App.4th at pp. 1081-1083.) Finally, the court held that under the particular circumstances of the case, the immunity of section 5278 also applied to Heater's medical malpractice claim. The court reasoned: "[S]ection 5278's immunity extends to the detention of persons for '*treatment* and evaluation.' (Italics added.) When read together with section 5152, which itself mandates treatment be provided to involuntary detainees, no other conclusion is possible than that section 5278 means precisely what it says it means, and that civil liability, whether for battery, for false imprisonment, or for medical malpractice is precluded insofar as the detention is 'in accordance with the law.'" (*Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at p. 1083.)

This court's holding in *Heater* should not be interpreted to mean that section 5278 immunizes from liability *any* act or omission that may occur during a lawfully initiated 72-hour hold under section 5150. Indeed, in *Heater*, the court expressly rejected the hospital's argument that the statutory immunity conferred by section 5278 is absolute. (*Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at p. 1084.) The court noted that one of the primary purposes of the LPS Act is "'to protect mentally disordered persons,'" (*Ibid.,* quoting *Michael E. L. v. County of San Diego, supra,* 183 Cal.App.3d 515, 525) and pointed out that interpreting the statute to confer absolute immunity "would not protect, but would instead expose to the possibility of abuse, the mentally disordered." (*Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at p. 1084.)

As with any case precedent, the language of *Heater* referring to the medical malpractice claim must be construed with reference to the facts actually presented by the case, and the positive authority of the court's decision is coextensive only with those facts. (*Trope v. Katz* (1995) 11 Cal.4th 274, 284 [45 Cal.Rptr.2d 241, 902 P.2d 259].) There is no reference in *Heater* to the plaintiff having made any allegation that the medical treatment he received during his involuntary commitment fell below the applicable standard of professional care. Rather, Heater's medical malpractice claim was based solely on the fact that he was detained involuntarily and treated without consent. Heater's claim of medical malpractice was inextricably tied to his allegations that he had been wrongfully detained by the

hospital without probable cause and medicated without his consent. (*Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at pp. 1079-1083.)

*Heater* stands for the proposition that the immunity of section 5278 extends to claims based on circumstances that are inherent in an involuntary detention pursuant to section 5150. Without the immunity provided by section 5278, an involuntary detention and treatment without consent would arguably constitute kidnapping, false imprisonment, or battery. Section 5278 was intended to provide immunity for claims based on conduct that is expressly authorized by the LPS Act but would otherwise constitute a civil or criminal wrong. Under *Heater,* a plaintiff who is properly detained in accordance with the LPS Act may not assert any civil claim based solely on the fact that he was detained, evaluated, or treated without his consent.

However, *Heater* does not support an interpretation and application of section 5278 that would confer blanket immunity for any act or omission that might occur during a 72-hour hold, no matter how negligent, wrongful, or even criminal. For the same reason we rejected absolute immunity in *Heater,* we reject such an expansive reading of the scope of immunity provided by section 5278. We similarly reject Grossmont Hospital's invitation to limit liability to "extreme or outrageous acts not rationally related to either a therapeutic purpose or necessary to maintain the detainment for the required period." Such a construction of the statute would subvert the intent of the LPS Act to protect the mentally disordered by exposing them to the possibility of grossly negligent or intentional mistreatment, with no legal recourse. (Cf. *Heater v. Southwood Psychiatric Center, supra,* 42 Cal.App.4th at p. 1084.) It would even insulate from liability some criminal acts committed against the mentally disordered during the detention. As we noted in *Heater,* section 5278 must be interpreted to avoid such absurd and extreme results. (*Heater, supra,* 42 Cal.App.4th at p. 1085.) We do not believe the Legislature intended to deprive the mentally disordered of any legal recourse for any and all acts that might be committed against them during the course of an involuntary detention.

A more reasonable interpretation of the statute, consistent with this court's decision in *Heater,* compels the conclusion that the scope of section 5278 immunity extends to claims based on facts that are inherent in an involuntary detention pursuant to section 5150. If there is probable cause for the detention, the statute therefore provides immunity for the decision to detain as well as for the detention and its inherent attributes, including the fact that the patient must necessarily be evaluated and treated without consent. These are all inherent aspects of the statutory scheme and thus cannot provide the basis for a civil suit. However, the immunity does not extend to other

negligent acts, intentional torts, or criminal wrongs committed during the course of the detention, evaluation, or treatment.

Jacobs does not dispute that there was probable cause for her detention, nor has she alleged that Grossmont Hospital is liable merely for detaining, treating, or evaluating her without her consent. Rather, she is suing for negligent acts allegedly committed during the course of her involuntary detention and treatment. We conclude that section 5278 does not provide immunity for injuries proximately caused by negligence or other wrongful acts or omissions that may occur during the course of an otherwise valid detention[2] and that the Legislature did not intend to exonerate health care providers from all liability, including liability for injuries proximately caused by their negligent or criminal acts or omissions in implementing the terms and conditions of a 72-hour hold.[3]

Our interpretation of the scope of immunity of section 5278 is consistent with its statutory counterpart—Government Code section 856—which provides immunity to public entities and their employees who diagnose and confine persons with mental illness or addiction. Government Code section 856, subdivision (a), exempts from liability public entities and their employees for injuries resulting from determining whether to confine a person for mental illness or addiction, determining the terms and conditions of that confinement, or determining whether to release the person, but only if these determinations are carried out with due care. (Gov. Code, § 856, subd. (b).) Public employees are specifically *not* exonerated from liability for injuries proximately caused by their negligent or wrongful acts or omissions in carrying out or failing to carry out the specified determinations. (Gov. Code, § 856, subd. (c).) These statutory provisions reflect a policy that "provides

---

[2]To further the statutory goal of effectively treating the mentally ill, patients placed on a 72-hour hold must promptly receive an evaluation, treatment and care. (§ 5152.)

[3]In *Cruze v. National Psychiatric Services, Inc., supra,* 105 Cal.App.4th 48, the defendant argued there was no immunity under section 5278 for her claims that "the Hospital improperly failed to medicate [her] and falsified records." The court rejected this assertion on the ground that "[t]he record simply does not support these allegations." (*Cruze, supra,* 105 Cal.App.4th at p. 56.) In dictum, the court went on to cite *Heater* for the proposition that the claim of failure to medicate, even if supported by the evidence, would fall within the immunity provided by section 5278. The court reasoned: "If this were not the case, every detention under section 5150 could result in a malpractice lawsuit, and section 5278 would be rendered meaningless." (*Cruze, supra,* 105 Cal.App.4th at p. 57.) However, the court declined to address whether the immunity of section 5278 applied to willful, wanton and intentional misconduct, noting there were no facts before it to support such a position. (*Cruze, supra,* 105 Cal.App.4th at p. 57.) We agree with *Cruze* that the immunity provided by section 5278 precludes a claim of medical malpractice based on facts inherent in a section 5150 commitment, such as detention and treatment without consent. However, we do not interpret either *Cruze* or *Heater* to insulate from liability negligent medical treatment that falls below the standard of professional care.

immunity for diagnosing, treating, confining, and releasing the mentally ill, but makes clear 'that public entities and employees are liable for injuries caused by negligent or wrongful acts or omissions in administering or failing to administer prescribed treatment or confinement.' [Citations.]" (*County of Los Angeles v. Superior Court* (1965) 62 Cal.2d 839, 844 [44 Cal.Rptr. 796, 402 P.2d 868].)

Here, Jacobs alleged that Grossmont Hospital's negligence during the 72-hour hold proximately caused her injuries. In granting summary judgment, the court found that the immunity of section 5278 applied, based on its reading of *Heater*. The court assumed that under section 5278, Grossmont Hospital was exempt from *all* liability for any negligence on its part that may have occurred during a lawful 72-hour hold. We have now clarified that this is not a correct interpretation of section 5278. The relevant inquiry in this case is whether Grossmont Hospital is liable for Jacobs's injuries proximately caused by its failure to use due care in administering her course of treatment. Because we cannot say on the record before us that, as a matter of law, Grossmont Hospital did not breach the applicable standard of care, the judgment must be reversed.[4]

## IV.

### DISPOSITION

The judgment is reversed. Jacobs is entitled to costs on appeal.

Benke, Acting P. J., and Nares, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 9, 2003. George, C. J., and Brown, J., did not participate therein.

---

[4]In light of our reversal, we need not address Jacobs's alternative argument that her admission to Grossmont Hospital was independent of the section 5150 hold because her primary care doctor authorized her admission.